UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIYANI M. MCCOY, | : | Civil No. 3:15-CV-00629 |
| | : | |
| Plaintiff, | : | |
| | : | (Magistrate Judge Saporito) |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of | : | |
| Social Security | : | |
| | : | |
| Defendant. | : | |

MEMORANDUM

## I.  BACKGROUND

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Kiyani M. McCoy's claim for  disability income benefits and supplemental security income.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," the individual has worked long enough, and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Kiyani M. McCoy meets the insured status requirements of the Social Security Act through March 31,

2017. (Tr. 17).

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind, or other disabled individuals who have little or no income.

On March 1, 2013, plaintiff, Kiyani M. McCoy ("McCoy"), protectively[1] filed an application for disability insurance benefits and an application for supplemental security income benefits on March 29, 2013. (Tr. 16). The applications were initially denied on May 1, 2013. Thereafter, McCoy requested, and was granted, an administrative hearing. (Tr. 16).  On May 1, 2014, with the assistance of Andrew S. Youngman, a non-attorney representative, Mr. McCoy appeared and testified at a hearing in Wilkes-Barre, Pennsylvania before Administrative Law Judge Therese A. Hardiman ("ALJ").  Impartial vocational expert Marilyn Stroud ("VE Stroud") also appeared and testified. (Tr. 34, 51). On September 23, 2014, the ALJ issued a decision

---

[1]Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

2

denying McCoy's applications. (Tr. 27) On October 31, 2014, McCoy filed a request for review with the Appeals Council and on January 28, 2015, the Appeals Council concluded that there was no basis upon which to grant McCoy's request. (Tr. 1-3). Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

McCoy then filed a complaint in this court on March 31, 2015. Supporting and opposing briefs were submitted and the appeal[2] became ripe for disposition on September 4, 2015, when McCoy filed his reply brief.

McCoy has past relevant employment[3] as a cashier, which was described by VE Stroud as a skill level of 2 and light exertion level; as a security guard, which was described as light and semi-skilled; and in shipping and receiving at a paint company, described as a skill level of 2

---

[2] Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D. Pa. Local Rule 83.40.1.

[3] Past relevant employment in the present case means work performed by McCoy during the seven years prior to the date his claim for disability was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560, .1565; id. §§416.960, .965

and medium exertion.  (Tr. 52).

McCoy claims that he became disabled on March 1, 2013.[4]  McCoy alleges that his mental impairments include intermittent explosive disorder, impulse control disorder and antisocial personality disorder. According to McCoy's treating psychiatrist, Dr. Steven Kafrissen, McCoy exhibits persistent anxiety accompanied by motor tension, autonomic hyperactivity apprehensive expectation, vigilance, and scanning. (Tr. 474). According to Dr. Kafrissen, McCoy also exhibits persistent irrational fear and recurrent severe panic attacks, anxiety resulting in moderate restrictions of his activities of daily living, and extreme difficulty in maintaining social functioning. He exhibits deficiencies in concentration, persistence/pace, further causing episodes of decompensation in work or work-like settings which cause him to withdraw from the situation or experience exacerbation of signs and symptoms. The anxiety and hypervigilance make him feel the need to sleep with a knife on his person

---

[4] McCoy was 38 years old at the alleged disability onset date and 40 at the time of the administrative hearing when the ALJ issued her decision. At all times relevant to these proceedings, McCoy was considered a "younger individual." The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49." 20 C.F.R., pt. 404, subpart P, app. 2, §201(h)(1).

or hide weapons in the house. Dr. Kafrissen stated that these symptoms are secondary to a significant diagnosis of schizoaffective disorder. (Tr. 476).   He opined that the schizoaffective disorder manifests itself as both depressive and manic syndromes. (Tr. 478). He further opined that the depressive episodes are characterized by anhedonia of pevasive loss of interest, sleep disturbances, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, and hallucinations, delusions or paranoid thinking. The schizoaffective disorder results in marked restrictions of his activities of daily living, extreme difficulties in maintaining social functioning, extreme deficiencies of concentration persistence or pace and extreme episodes of deterioration. (Tr. 479). Dr. Kafrissen also stated that McCoy suffers from depressive symptoms, guilt, worthlessness, hopelessness, and helplessness secondary to his diagnosis of schizoaffectrive disorder (Tr. 480).

The administrative record in this case is 480 pages in length and we have reviewed that record. The opinions and records conclude that McCoy would be precluded from engaging in work, in that "ability to work" is synonymous with the ability to work full-time, defined by the Agency as

"ability to do sustained work-related physical and mental activities . . . 8 hours a day, for 5 days a week, or an equivalent work schedule." Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *1.

For the reasons set forth below, we will remand the case to the Commissioner for further proceedings.

II.   STANDARD OF REVIEW

A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a Social Security claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. § 405(g); id. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402

U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).   But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."  Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole."  Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003).  The question before this Court, therefore, is not whether the plaintiff is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.  See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The

Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

    B.    INITIAL BURDENS OF PROOF, PERSUASION AND ARTICULATION FOR THE ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); id. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); id. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments

identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. 42 U.S.C. §423(d)(5); id. §1382c(a)(3)(H)(i); 20 C.F.R. §§404.1512, 416.912; Mason, 994 F.2d at 1064.

Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic procedural and substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory

explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

C.  LEGAL BENCHMARKS FOR THE ALJ'S ASSESSMENT OF MEDICAL OPINION EVIDENCE

The Commissioner's regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions. 20 C.F.R. §§404.1527(a)(2), 416.927(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion he or she receives. Id. §§404.1527(c), 416.927(c).

In deciding what weight to accord to competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. §§404.1527(c) and

416.927(c).  "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."  Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *2.  Treating sources have the closest ties to the claimant, and therefore their opinions are generally entitled to more weight.  See 20 C.F.R. §§404.1527(c), 416.927(c)(2)("Generally, we give more weight to opinions from your treating sources . . . ."); id. §§404.1502, 416.902 (defining treating source).  Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. Id. §§404.1527(c)(2), 416.927(c)(2); see also Soc. Sec. Ruling 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record). Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and

frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §§404.1527(c), 416.927(c).

At the initial level of administrative review, State agency medical and psychological consultants may act as adjudicators. See Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *4. As such, they do not express opinions; they make findings of fact that become part of the determination. Id. However, 20 C.F.R. §§404.1527(e) and §416.927(e) provide that, at the ALJ and Appeals Council levels of the administrative review process, ALJs must consider these opinions as expert opinion by non-examining physicians and psychologists and must address these opinions in their decisions. Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *6. Opinions by state agency consultants can be given weight "only insofar as they are supported by evidence in the case record." Soc. Sec.

Ruling 96-6p, 1996 WL 374180, at *2.  In appropriate circumstances, opinions from nonexamining state agency  medical or psychological consultants may be entitled to greater weight than the opinions of treating or examining sources.  Id. at *3.

Furthermore, as discussed above, it is beyond dispute that, in a social security disability case, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. This principle applies with particular force to the opinion of a treating physician.  See 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").  "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)(quoting Mason, 994 F.2d at 1066)); see also Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

III. <u>DISCUSSION</u>

A.   <u>ALJ's Decision Denying McCoy's Claim</u>

In her September 23, 2014, decision denying McCoy's claims, the ALJ assessed McCoy's allegations at each step of the sequential evaluation process before concluding that McCoy was not disabled under the Social Security Act at any point between March 1, 2013, and September 23, 2014.  At step one, the ALJ found that McCoy had not engaged in substantial gainful activity during the relevant period.  (Tr. 19).  At step two, the ALJ found that McCoy had the following medically determinable severe impairments: intermittent explosive disorder, impulse control disorder, and antisocial personality disorder.  (<u>Id.</u>) Although the ALJ noted that the record shows that McCoy suffers from schizoaffective disorder, anxiety disorder, heartburn, hypertension, sinusitis, lipoma, left shoulder subacrominal spur, and status post bunionectomy/arthoplasty of the right ankle, she found that these impairments were medically determinable but non-severe due to a lack of evidence of any ongoing functional limitations associated with these impairments. (<u>Id.</u>).  At step three, the ALJ found that McCoy did not have

an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 at any point during the relevant period. (Tr. 20-29).

Prior to step four of the sequential evaluation process, the ALJ assessed McCoy's residual RFC based on the relevant medical and other evidence of record. Based on this evidence, the ALJ found that McCoy retained the residual functional capacity to perform "a full range of work" as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: occasional climbing, balancing and stooping, never on ladders, avoid vibration and hazards, limited to simple routine tasks, low stress defined as only occasional decision making and only occasional changes in the work setting, no interaction with public and only occasional interaction with co-workers and supervisors.

(Id. at 22). In doing so, the ALJ accorded "little weight" to the medical source statement, by Dr. Kafrissen and A.P. Linnon, LSW, and, "great weight" to non-examining psychologist Dr. Rohar. The ALJ also found that the testimony from McCoy and his wife about the intensity, severity,

16

and limiting effects of his symptoms was not entirely credible because the record evidence failed to support the alleged degree of incapacity.

At steps four and five, the ALJ's findings were informed by VE Stroud's testimony. During McCoy's administrative hearing, VE Stroud testified that an individual with the same RFC and vocational characteristics as McCoy would be unable to engage in any of McCoy's past relevant work. (Tr. 53-54). Accordingly, the ALJ found in McCoy's favor at step four by concluding that McCoy was unable to engage in any of his past relevant work. (Tr. 26). VE Stroud also testified, however, that an individual with the same RFC and vocational factors as McCoy could engage in other work, and identified the following three representative occupations: laundry worker (63,000 jobs nationally), silver wrapper (126,300 nationally), and leaf tier (1,473,000 jobs nationally)(Tr. 54-55). Accordingly, at step five the ALJ found against McCoy by concluding that he could engage in other work that existed in significant numbers in the national economy.

B.    THE ALJ IMPROPERLY EVALUATED THE MEDICAL OPINION
EVIDENCE

McCoy argues that the ALJ failed to consider the opinions of McCoy's treating sources and improperly rejected those opinions. (Doc. 12 at 7-13). In response, the Commissioner contends that the ALJ properly evaluated the medical opinion evidence. (Doc. 16 at 15-20).

The ALJ explained the weight she accorded the source statements of Dr. Kafrissen, McCoy's treating psychiatrist and A.P. Linnon, LSW, therapist, as follows:

> The opinion of Dr. Kasrissen (Exhibit 15F) and the multiple medical source check the box/circle statements/opinions from A.P. Linnon, LSW (Exhibits 8F; 9F; 11F) are given little weight. These opinions are often internally inconsistent with one another, contain no actual signs or laboratory findings to support each of the limitations and are not well supported by the actual objective mental status findings contained in the evidence of record as previously discussed. As such, these opinions/statements are not controlling and accorded little wight as they are clearly not well supported on the face of the opinions, the actual examination findings, or the record as a whole.

(Tr. 24). McCoy argues that the ALJ failed to address many of the §404.1527 factors regarding the evaluation of medical opinions. The

pertinent §404.1527 factors which the ALJ is bound to consider include the regulation stating that more weight will be given to treating sources' opinions who has "reasonable knowledge of your impairments" than a nontreating source. 20 C.F.R. §404.1527(c)(2)(ii); see also id. §416.927(c)(2)(ii). The record is devoid of evidence suggesting that McCoy's treating sources lack reasonable knowledge of his impairments. Rather, the evidence is to the contrary. McCoy sees Dr. Kafrissen once per month and therapist Linnon twice per month. (Tr. 22). Further, the ALJ noted that McCoy has been under psychiatric care from May 2013 to February 2014. (Id. at 23). However, the medical records confirm that he was first seen at Community Counseling Services on October 8, 2012, after moving from New York to Pennsylvania in March 2012 (Doc. 12-7 at 54,76).

The medical source statements by Dr. Kafrissen and A. P. Linnon provide a starkly different assessment of McCoy's mental health than the opinion of the non-examining source, John Rohar, Ph.D., a state agency psychologist whose opinion the ALJ gave "great weight." The ALJ explained the weight accorded to Dr. Rohar's opinion evidence as follows:

> As for the opinion evidence, the undersigned considered the April 30, 2013 [,]opinion of Dr. Rohar

who opines that the claimant's mental impairments cause no more than mild to moderate functional limitations and do not preclude him from performing the basic mental demands of competitive work on a sustained basis. This opinion is given great weight as it is consistent with the record evidence as a whole including that received at the hearing level as discussed in more detail above.

(Tr. 24) (citation omitted). A review of Dr. Rohar's opinion reflects that it is dated April 30, 2013. But the vast majority of the relevant medical evidence submitted in this case documents mental health treatment that occurred <u>after</u> Dr. Rohar rendered his opinion.

An RFC form prepared by a non-examining state agency medical consultant cannot constitute substantial evidence where it is not based upon the full medical record before the ALJ at the time of hearing and decision, particularly where the medical evidence suggests a subsequent deterioration in the claimant's condition. <u>See</u> <u>Frankl v. Shalala</u>, 47 F.3d 935, 937-38 (8th Cir. 1995) (state agency RFC form based on medical records through September 1990, prior to a deterioration in the claimant's condition, did not constitute substantial evidence of his ability to perform a full range of light work at the time of his December 1991 hearing); <u>Kroh</u>

v. Colvin, Civil Action No. 3:13-CV-01533, 2014 WL 4384675, at *21–22 (M.D. Pa. Sept. 4, 2014) (state agency RFC assessment in December 2010, at which time claimant had experienced no decompensation episodes and denied suicidal ideation, did not constitute substantial evidence of her RFC at the time of her hearing and the ALJ's decision in January 2012, where in the intervening time period, she was hospitalized twice, her medications were adjusted several times, and she began psychotherapy treatment) (citing Frankl); Oliver v. Astrue, No. 07-1733, 2008 WL 4646125, at *2 (W.D. Pa. Oct. 17, 2008) (remanding case for development of medical evidence where the only medical findings regarding the claimant's RFC were underdeveloped) (citing Frankl).

Here, Dr. Rohar's RFC assessment was prepared on April 30, 2013. Prior to that, McCoy's psychiatric treatment record consisted of the following: (1) an overnight emergency room visit on October 5 and 6, 2012, in which McCoy presented with complaints of anxiety, panic, and anger, and he was given a 1mg dose of lorazepam, evaluated by a "crisis clinician," and discharged to home with a referral for follow-up treatment (Tr. 259-67, 324-29); (2) an intake evaluation with Dr. Jesse at an

21

outpatient mental health clinic on October 8, 2012, where he was diagnosed with intermittent explosive disorder and antisocial personality disorder, and he was prescribed Thorazine 50mg daily at bedtime (Tr. 301-18, 322-23); and (3) a follow-up evaluation with Dr. Chang at the same outpatient mental health clinic, where the same diagnosis was confirmed, a series of more regular follow-up appointments were scheduled, and his Thorazine dosage was increased to 100mg daily at bedtime (Tr. 298-300, 319-22).

McCoy's administrative hearing was held one full calendar year later, on May 1, 2014, and the ALJ's decision was not issued until September 23, 2014, nearly seventeen months after Dr. Rohar completed his mental RFC assessment. In that intervening period, McCoy's medication regimen underwent frequent and significant changes, from which a factfinder might infer a more serious impairment or one or more episodes of decompensation.[1] See generally 20 C.F.R. pt. 404, subpart P, app. 1, § 12.00(C)(4). On May 14, 2013, his treatment providers added a prescription for Depakote ER 1000mg daily at bedtime. (Tr. 408, 421-22).

---

[1] The Court makes no finding on this matter, which is a fact issue best left to the ALJ for resolution on remand based on a more fully developed record.

On June 11, 2013, in addition to the bedtime dose of Thorazine 100mg, a daytime dose of Thorazine 25mg was added. (Tr. 408, 419-20). On July 26, 2013, his Thorazine dosage was increased to three doses per day—25mg twice daily and 125mg at bedtime. (Tr. 408, 417-18). On September 20, 2013, a dose of Cogentin 1mg twice daily was added to his existing prescriptions for Thorazine and Depakote. (Tr. 408, 415-16). On October 24, 2013, McCoy's mental health providers added Risperdal 2mg daily at bedtime to the mix. (Tr. 408). On November 15, 2013, his Risperdal dosage was increased to 4mg daily at bedtime, his Thorazine dosage was reduced to 25mg three times daily plus 50mg daily at bedtime, and his Depakote and Cogentin dosages remained the same. (Tr. 408, 413-14). On April 14, 2014, two weeks before McCoy's hearing before the ALJ, one of his mental health treatment providers, A.P. Linnon, LSW, provided an RFC assessment in which Linnon found that McCoy suffered from marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, marked deficiencies of concentration, persistence or pace, and marked episodes of deterioration or decompensation. (Tr. 382-84).

Based on this record, in which McCoy's mental status appears to have deteriorated significantly in the intervening period, Dr. Rohar's April 2013 mental RFC assessment simply does not constitute substantial evidence of McCoy's mental RFC at the time of his May 2014 hearing and the ALJ's September 2014 decision, as they were not based on his full mental health treatment record.

Our review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence. Accordingly, we will order that the Commissioner's final decision denying Kiyani M. McCoy's application for benefits under Title XVI of the Social Security Act be vacated and remanded to conduct a new administrative hearing. We will further order that the Commissioner be directed to "reopen and fully develop the record before rendering a ruling" on the plaintiff's claim. Thomas v. Comm'r of Soc. Sec., 625 F.3d 798, 800 (3d Cir. 2010).

An appropriate order will be entered.

_s/ Joseph F. Saporito, Jr._
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

Dated:  May 25, 2016